UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Nancy M. Muir, | : |
| | : |
| Plaintiff, | :    Civil Action No.: 1:16-cv-00089-RJA |
| v. | : |
| | : |
| One Beacon America Insurance Company, et al. | : |
| | : |
| Defendant(s), | : |
| | : |
| Harper Insurance Limited, F/K/A Turegum | : |
| Insurance Company, Assicurazioni Generali, SPA, | : |
| | : |
| Third-Party Plaintiff(s), | : |
| v. | : |
| | : |
| Hedman Resources Ltd., | : |
| | : |
| Third-Party Defendant(s) | : |
| | : |
| | : |
| | : |

**MEMORANDUM OF LAW
IN SUPPORT OF
DEFENDANTS HARPER INSURANCE LIMITED, F/K/A TUREGUM
INSURANCE COMPANY, AND ASSICURAZIONI GENERALI, SPA'S
OPPOSITION TO PLAINTIFF MUIR'S
MOTION FOR SUMMARY JUDGMENT**

FORAN, GLENNON PALANDECH
PONZI & RUDOLF PC
Helen Franzese, Esquire
Ronald D. Puhala, Esquire
120 Broadway, Suite 1130
New York, New York 10271
(212) 257.7100
*Attorneys for Defendants/Third Party
Plaintiffs Harper Insurance Limited, f/k/a
Turegum Insurance Company, and
Assicurazioni Generali, SPA*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS .....................................................................................2

LEGAL ARGUMENT ...........................................................................................4

I.    THE LONDON COMPANIES INCORPORATE BY REFERENCE THEIR
      SUBMISSIONS FILED IN THE *MINEWEASER*, *NEILSON* AND *PEACE*
      MATTERS IN OPPOSITION TO *MUIR*'S MOTION FOR SUMMARY
      JUDGMENT ............................................................................ 4

II.   NEW YORK INSURANCE LAW § 3420 DOES NOT VOID THE COMPANIES'
      SETTLEMENT AGREEMENT WITH HEDMAN ......................................4

III.  MUIR CANNOT ESTABLISH COVERAGE UNDER THE LONDON COMPANIES'
      POLICIES AS A MATTER OF LAW..................................................7

      A.  Muir has not established that the London Companies' settlement with
          Hedman is void as a matter of law ............................................ 7

      B.  Muir has not established that Hedman is an insured under the London
          Companies' Policies ......................................................... 7

      C.  Muir has not established that the London Companies' additional coverage
          defenses must be dismissed as a matter of law.  ........................... 8

IV.   PLAINTIFF'S "VERTICAL EXHAUSTION" ALLOCATION IS
      IMPROPER. ....................................................................... 10

V.    UNDER NO CIRCUMSTANCES ARE THE LONDON COMPANIES REQUIRED
      TO PAY THE ENTIRE MUIR JUDGMENT OR EVEN A SIGNIFICANT PORTION
      THEREOF ..........................................................................11

      A.  Viking Pump caps an insurance carrier's obligation to its policy limits and does not
          preclude the carrier's subsequent rights to contribution from other implicated
          insurers.  ...................................................................12

      B.  New York Insurance Law § 3420(a) does not provide an allocation method, let
          alone, require "all sums" allocation.  ....................................17

VI.   PLAINTIFF  INCORRECTLY  DESCRIBES  THE  ATTACHMENT  POINT  OF  THE
      LONDON COMPANIES' POLICIES ..............................................18

CONCLUSION ..................................................................................19

## TABLE OF AUTHORITIES

*Capital Imaging Assoc., P.C. v. Mohawk Valley Medical Assoc., Inc.*, 725 F. Supp. 669,

   (N.D.N.Y. 1989)...................................................................................................... 8

*Consolidated Edison Co. of New York, Inc. v. Allstate Insurance Co.*, 98 N.Y.2d 208, 220, 774

   N.E.2d 687 (2002) ................................................................................................... 9

*Cosmopolitan Mutual Insurance Company v. Lumbermen's Mutual Casualty Company*, 20

   N.Y.2d 145 (1967) ............................................................................................... 1, 6

*Dedvukaj v. Allstate Insurance Company*, 175 A.D.2d 1 (1st Dept. 1991)............................ 1, 5,6

*Matter of Viking Pump, Inc.*, 27 N.Y.3d 244 (2016) ...................................................... 11, 12, 16

*Lippe v. Bairnco Corp.*, 99 Fed. Appx. 274 (2d Cir. 2004)............................................. 4

*Matter of New York County DES Litigation*, 89 N.Y.2d 506, 513, 678 N.E.2d 474, 655 N.Y.2d

   862 (1997) .............................................................................................................. 4

*Wenig v. Glen Falls Ind. Co.*, 294 N.Y. 195 (1945)....................................................... 6

## PRELIMINARY STATEMENT

Defendants Harper Insurance Limited, f/k/a Turegum Insurance Company ("Harper"), and Assicuranzioni Generali, SPA ("Generali") (collectively "the London Companies" or "Companies"), respectfully submit the following Memorandum of Law in Opposition to Plaintiff Muir's Motion for Summary Judgment.

Plaintiff's summary judgment motion must be denied as a matter of law for several key reasons. First, Plaintiff has no basis under New York Insurance Law § 3420 to void the London Companies' settlement agreement with Hedman; accordingly, she has no cause of action for insurance coverage under the policies at issue. Section 3420 does not prevent the settlement of insurance coverage disputes with regards to unknown, future claims that have not matured at the time of settlement. Decades of New York case law is clear on this point -- the policyholder and insurance carrier can terminate their insurance coverage, as to such claims, even after the underlying accident has occurred. See *Dedvukaj v. Allstate Insurance Company*, 175 A.D.2d 1 (1st Dept. 1991) and *Cosmopolitan Mutual Insurance Company v. Lumbermen's Mutual Casualty Company*, 20 N.Y.2d 145, 152 (1967).

Moreover, whether Hedman is an assured under the Companies' policies is a hotly disputed issue not currently subject to summary judgment. Plaintiff does not address the London Companies' coverage defenses, including the "expected and intended" and "concealment" defense -- let alone establish that these defenses fail as a matter of law.

Plaintiff's request for an "all sums" allocation is presumptuous at best and incorrect as a matter of law. The Companies are not responsible to pay the entire $5.8 million Muir judgment or anything close to that amount. However, the Court need not consider the details of a final judgment and any potential allocation of damages, as the Plaintiff is unable to establish insurance coverage under the Companies' policies as a matter of law.

1

## STATEMENT OF FACTS

### A.   Hedman is not an assured under the London Companies' Policies.

The assured under the Companies' policies, Gulf & Western Industries, Inc., did not purchase Hedman Resources Limited ("Hedman") stock in 1967 or at any time thereafter. See London Companies' Statement of Material Facts filed 22 July 2016 ("Jul. 2016 SOMF") ¶1.  Gulf and Western (Canada) Limited, an entirely different company from Gulf & Western Industries, Inc., purchased Hedman's stock in 1967. (Jul. 2016 SOMF ¶2).  Accordingly, for these and other reasons set forth in our prior briefing, Hedman is not an assured under the policies subscribed to in part by the London Companies.  (Jul. 2016 SOMF ¶¶ 3-6).  See also, London Companies Response to Muir's Statement of Material Facts, Response to ¶¶ 1 and 2.

### B.   Muir has not established the Aetna Primary Coverage is properly exhausted.

Even assuming *arguendo* that Aetna primary Policy No. 195548 SRA (as referenced in the Muir brief) provides insurance coverage to Hedman, that policy is not the applicable primary policy with regards Hedman's asbestos claims. Jul. 2016 Puhala Dec. Ex. B (attaching copy of Aetna Policy No. 195548 SRA).  Aetna issued Canadian primary policies, which assuming Hedman is an assured, are the applicable primary policies.  (Jul. 2016 SOMF ¶7)  By endorsement, if the Aetna Canadian policies provide coverage for a loss, the Aetna United States coverage does not apply.  (Jul. 2016 SOMF ¶7).

### C.   Muir cites to a non-cumulation clause only with regards to Policy UHL 0632.

The only policy severally-subscribed to by the Companies to which Muir alleges contains a non-cumulation clause is Policy UHL 0632.  (Jul. 2016 SOMF ¶8).  The London Companies' limit of liability regarding that policy is $50,000.  (Jul. 2016 SOMF ¶9).

**D.  The London Companies' total Limits of Liability in 1976 is $333,898.40.**

The Companies did not issue $29,650,000 in coverage in 1976.  For the first $6 million in coverage that year, the total limit of liability for Harper and Generali combined is approximately $209,998.40; (Jul. 2016 SOMF ¶10).  For the first $31 million in coverage in 1976, the limit of liability for Harper and Generali is approximately $333,898.40, combined. (Jul. 2016 SOMF ¶11). The Companies focus on the first $31 million in coverage in the 1976 year in response to Plaintiff's contention the Companies provide $29,625,000 in coverage in that year.

**E.  Muir has not established bodily injury occurring in 1976.**

Plaintiff Muir only alleges "exposure" to Hedman's asbestos during the 1976 policy period; plaintiff does not establish actual bodily injury in 1976 related to a Hedman product. (Jul. 2016 SOMF ¶12).   Prior to his diagnosis of mesothelioma in July 2014, Mr. Muir "enjoyed excellent health and was working full time …."  (Jul. 2016 SOMF ¶13).

**F.  The London Companies' settled their coverage dispute with Hedman nearly two (2) years prior to the filing of Muir's tort complaint.**

Plaintiff Muir served the tort complaint on Hedman on 27 August 2014, nearly two (2) years after the Companies' settlement agreement with Hedman in October 2012. (Jul. 2016 SOMF ¶14).  Mr. Muir was not diagnosed with mesothelioma until July 2014, 21 months after the Companies' settlement agreement with Hedman.  (Jul. 2016 SOMF ¶14)

## LEGAL ARGUMENT

**I.    THE LONDON COMPANIES INCORPORATE BY REFERENCE THEIR SUBMISSIONS FILED IN THE *MINEWEASER*, *NEILSON* AND *PEACE* MATTERS IN OPPOSTION TO *MUIR*'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Muir's summary judgment motion apparently relies on briefs filed by other plaintiffs in the *Mineweaser*, *Neilson* and *Peace* matters. Accordingly, the London Companies incorporate by reference their prior memorandum of law[1] and submissions in those matters in opposition to Muir's motion for summary judgment.

**II.    NEW YORK INSURANCE LAW § 3420 DOES NOT VOID THE COMPANIES' SETTLEMENT AGREEMENT WITH HEDMAN**

The London Companies specifically respond to Plaintiff Muir's attempt to void the London Companies' settlement with Hedman pursuant to New York Insurance Law § 3420, in light of the facts particular to Muir. The London Companies observe that Muir served his summons and complaint on Hedman on 27 August 2014, nearly two (2) years after the London Companies' settlement. (Jul. 2016 SOMF ¶14). Muir was not diagnosed with mesothelioma until July 2014, nearly 21 months after the Hedman settlement. (Jul. 2016 SOMF ¶15). "At the time of his diagnosis … [Mr.] Muir enjoyed excellent health, and was working full time …." (Jul. 2016 SOMF ¶13).

Muir's cause of action in tort against Hedman did not even accrue until nearly two years after the Hedman settlement. See, e.g., *Lippe v. Bairnco Corp.*, 99 Fed. Appx. 274, 282 (2d Cir. 2004) (finding "[u]nder current New York law a cause of action accrues in a toxic-tort case not on the date of exposure, but rather on 'the date of discovery of injury by the plaintiff or … the date

---

[1]Case 1:14-cv-00585-RJA-HKS, June 2015 Memorandum, Document 100-1; Case 1:14-cv-00585-RJA-HKS Dec. 2016 Memorandum, Document 124; and Case 1:14-cv-01093-RJA-HKS Feb. 2016 Memorandum, Document 56.

when through the exercise of reasonable diligence such injury should have been discovered …"). (Quoting, N.Y. C.P.L.R. § 214-c).  The "reference to 'discovery of the injury' [in § 214-c] means discovery of the condition on which the claim is based and nothing more." *Lippe, supra,* 99 Fed. Appx. at 282 (emphasis in original)(quoting *Matter of New York County DES Litigation*, 89 N.Y.2d 506, 513, 678 N.E.2d 474, 655 N.Y.2d 862 (1997)(internal quotations omitted).  Here, Muir's claim is based on injuries caused by mesothelioma beginning in 2014 – nearly two (2) years after the release of the London Companies' policies.

As discussed in detail in our prior briefing, neither New York Insurance Law § 3420 nor its interpretive case law, prohibit the settlement of an insurance coverage dispute with regards to future unknown claims – let alone where the tort cause of action has not even accrued at the time of the settlement.[2]  In fact, New York law allows a policyholder and insurer to cancel the policy outright, prior to notice of a claim.

For example, in *Dedvukaj v. Allstate Insurance Company*, 175 A.D.2d 1 (1st Dept. 1991), the tort claimant, Mr. Lino, was injured on the assured's premises on 22 January 1985.  One month later, the assured cancelled its liability policy "flat," that is, retroactive to the first day of coverage, 1 January 1985, for a return of the premium.  In June 1986, Mr. Lino served the assured with a summons and complaint related to the 22 January 1985 accident and injury.  The New York

---

[2]See Case 1:14-cv-00585-RJA-HKS, Dec. 2016 Memorandum, Document 124, Pages 34 – 38 of 44; case 1:14-cv-01093-RJA-HKS, Feb. 2016 Memorandum, Document 56, Pages 11 – 12 of 12 (establishing New York Insurance Law §3420 does not void the Companies' settlement regarding future unknown claims).  See also, Case 1:14-cv-00585-RJA-HKS, June 2015 Memorandum, Document 100-1 Pages 14 – 16 of 27 and case 1:14-cv-00585-RJA-HKS, Dec. 2016 Memorandum, Document 124, Pages 33 – 34 of 44 (establishing New York Insurance Law § 3420(b) is inapplicable as Plaintiff does not have an enforceable judgment against Hedman in Canada; and case 1:14-cv-00585-RJA-HKS, Dec. 2016 Memorandum, Document 124, Page 38 of 44 (establishing Insurance Law § 3420 does not apply as Plaintiff has not established that Hedman is an insured under the London Companies' policies).

Appellate Division upheld the policy cancellation stating, "as the dissent has aptly observed, plaintiff's 'flat' cancellation of the policy … was valid even after the occurrence of an insurable accident since the rights of a third party had not then been adversely affected." *Dedvukaj*, *supra*, 175 A.D. 2d at 3.

The dissent in *Dedvukaj,* to which the majority agreed, concluded, "the [trial] court noted correctly that the Lino claim had not matured or even been reported as the time of the cancellation, and held that as the right of a third party were not then affected, the 'flat' cancellation was valid." Id. at 3. The decision in *Dedvukaj* continues the long standing precedent in New York that a policyholder may terminate their coverage as to unknown, non-matured claims.

In *Cosmopolitan Mutual Insurance Company v. Lumbermen's Mutual Casualty Company*, 20 N.Y.2d 145, 152 (1967) the New York Court of Appeals stated:

> An insured and an insurer are, of course, free to agree upon the "cancellation flat" of a binder before matured risk and, so long as the rights of no third party are affected, there is no reason why an insured may not effectively cancel "flat" even after the occurrence of an insurable accident.

(citations omitted).

Thus, even assuming that Hedman is an assured under the London Companies' policies, which it is not, under New York law it could have canceled those policies in October 2012, as regards Muir's claim which did not mature until August 2014. Hedman could not void the cancellation after it received notice of the Muir claim. See, e.g., *Dedvukaj*, *supra*, 175 A.D. 2d at 1, 3. Therefore, Muir, having a non-matured claim at the time of the settlement and "standing in the shoes of Hedman," has no rights greater than Hedman. See, e.g., *Wenig v. Glen Falls Ind. Co.*, 294 N.Y. 195, 198-199 (1945).

Here, the facts are even more compelling. The parties disputed whether Hedman was an assured under the Companies' policies. Hedman settled a coverage dispute with the London

Companies in October 2012, releasing any coverage rights **it might have had**, had it established

coverage under the policies.  If Hedman could, as an established assured, cancel the Companies'

policies as to non-matured claims, it certainly could "cancel" its disputed insurance rights by

settlement as to those claims.  Plaintiff Muir, standing in the shoes of Hedman, cannot now void

that settlement.  New York Insurance Law § 3420 does not provide otherwise.

### III.   MUIR CANNOT ESTABLISH COVERAGE UNDER THE LONDON COMPANIES' POLICIES AS A MATTER OF LAW

#### A.  Muir has not established that the London Companies' settlement with Hedman is void as a matter of law.

Plaintiff Muir cannot establish that the London Companies' settlement agreement with

Hedman is void under New York Insurance Law § 3420.  In fact, New York law, as discussed in

Point II, is to the contrary.  Accordingly, Muir's demand for a coverage determination must be

denied.

#### B.  Muir has not established that Hedman is an insured under the London Companies' Policies.

Even assuming § 3420 voids the Companies' valid settlement agreement, whether Hedman is

an assured under the Companies' coverage is a controverted fact.[3]  Additionally, discovery has not

even begun in the *Muir* matter.  The London Companies understand that there are historical

documents in the possession of Hedman in Canada, which relate to Hedman's own insurance

program and the Gulf & Western, Industries, Inc. coverage.    Franzese Affidavit, ¶¶ 4-6.  These

documents may further undercut Muir's argument that Hedman was part of the Gulf and Western

---

[3] See, e.g., Case 1:14-cv-00585-RJA-HKS, Dec. 2015 Memorandum, Document 124, Pages. 38-41 of 44; Case 1:14-cv-00585-RJA-HKS, Dec. 2015 Joint Response Memorandum", Document 133, Pages 3–4 of 120, ¶¶ 1-2; The London Companies Response to Plaintiff Muir's Statement of Material Fact, Response, ¶¶ 1 - 3.

insurance program beginning in 1967. At a minimum, the Companies are entitled to pursue discovery on this issue.

The London Companies may also seek discovery from TCI, Inc., the purported successor to the assured, Gulf and Western Industries, Inc.  In recent state court filings, TCI asserts that Hedman was not a subsidiary of Gulf and Western Industries, Inc., and that Gulf and Western never purchased any stock in Hedman, contradicting Muir's assertion regarding Hedman's corporate status.  See Jul. 2016 SOMF ¶ 4.  It may be necessary to subpoena TCI documents and depose witnesses on the corporate successor issue.

Lastly, it is uncontroverted that during the time Muir contends Hedman was an insured under the Gulf and Western Industries' policies, Hedman purchased its own line of insurance coverage, including general liability coverage for asbestos claims. (Jul. 2016 SOMF ¶ 5).  If necessary, the London Companies may produce expert testimony on the custom and practice of insurance coverage and how a financially struggling company, such as Hedman, would not pay for concurrent insurance coverage if it already had such coverage under the Gulf and Western policies.

The London Companies are entitled to complete discovery on these central and crucial issues.  Accordingly, Muir's summary judgment motion seeking a coverage determination must be denied.  See *Capital Imaging Assoc., P.C. v. Mohawk Valley Medical Assoc., Inc.*, 725 F. Supp. 669, 679 (N.D.N.Y. 1989) (finding "implicit in the text of Rule 56 is a requirement of sufficient time for discovery").

### C.  **Muir has not established that the London Companies' additional coverage defenses must be dismissed as a matter of law**.

Even if New York Insurance Law §3420 voids the Company's settlement agreement, before the court can find coverage, let alone address any allocation issues, Muir must defeat **all** of the Companies' coverage defenses as set forth in their responsive pleadings  as a matter of law.

These defenses include the Companies' "concealment" and "expected and intended" defenses (Fourth and Eighteenth Separate Defenses). See Feb. 2016 Answer, Doc. No. 3, pp. 7 and 9 of 20.

The Companies severally-subscribed to Policy No. UHL 0632 (1 January 1976 to 1 January 1977), which provides coverage for "Personal Injuries caused by or arising out of each occurrence … ." The term "occurrence" is defined as "an accident or a happening or event or continuous or repeated exposure to conditions which **unexpectedly and unintentionally result in personal injury** … during the policy period. See Duggan Declaration, Ex, 11, Pages 28 and 30 of 53 (emphasis added.) In *Consolidated Edison Co. of New York, Inc. v. Allstate Insurance Co.*, 98 N.Y.2d 208, 220, 774 N.E.2d 687, 692 (2002), the court held the assured has the burden to establish that the damages for which it claims coverage were neither expected nor intended, because "the requirement of a fortuitous loss is a necessary element of insurance policies based on either an 'accident' or 'occurrence,' and thus, the insured has the initial burden of proving it." Plaintiff has not met this burden of proof. Indeed, there is no mention at all in Plaintiff's motion of the "expected or intended" defense or any of the Companies' Separate Defenses. See also, case 1:14-cv-00585-RJA-HKS, Dec. 2015 Memorandum, Doc. No. 124, Pages 41-42 of 44 (discussing Plaintiffs' failure to address the Companies' coverage defenses, including the "concealment" defense).

The trial court's bench decisions in *Muir* and *Mineweaser* support the London Companies' "expected and intended" and "concealment" defenses. See Feb. 2016 Pl. Exhibit A, Document 1-1, Pages 9-10 of 31, ¶¶ 26 – 34 (indicating Hedman ignored repeated warnings from the Ontario Ministry of Labour regarding the dangers of its asbestos); Case 1:14-cv-00585-RJA-HKS, Jul. 2014 Pl. Exhibit A, Document 1-3, Pages 9-10 of 19, ¶¶ 31 – 41 (providing Hedman ignored repeated warnings from 1969 to 1975 that "exposure to Hedman's asbestos could cause lung

cancer" and failed to provide warnings of the danger of asbestos dust, as required by the Federal Regulations).

Even based on the very limited record in this case, as discovery has not yet begun, the Companies' have viable coverage defenses based on the "expected and intended" clause and "concealment," which at the very least, raises issues of material fact. Accordingly, Muir's motion seeking summary judgment regarding coverage must be denied.

## IV.     PLAINTIFF'S "VERTICAL EXHAUSTION" ALLOCATION IS IMPROPER.

A decision regarding the mechanics of the allocation method which assumes the Companies' valid settlement agreement is void, ignores the Companies' coverage defenses, and further assumes that all of the Companies' policies in 1976 contain a non-cumulation clause, is premature at best. Notwithstanding, to the extent the Court entertains Muir's "vertical exhaustion" methodology, the London Companies do not concede it is applicable as argued by Plaintiff.

First, the *Viking Pump* court in their discussion of "vertical exhaustion" stated central to their decision was the fact "the Insureds are not seeking multiple recoveries from different insurers under concurrent policies for the same loss, and the other insurance clause does not apply to successive insurance policies." Viking Pump, supra. 27 N.Y.3d at 266. Here, however, Muir continues to sue all of the Gulf and Western insurance carriers from 1970 to 1977, contending that all of the policy years and all of the various insurance policies are equally and concurrently liable under an "all sums" "joint and several" approach. Complaint, Doc. No. 1, Page 8 of 13, ¶¶ 27, 37. Muir has not dismissed any of the policies outside of the 1976 policy year in light of *Viking Pump*. Arguably, therefore, Plaintiff is in effect "seeking multiple recoveries from different insurers under

concurrent policies for the same loss."[4]  Plaintiff must, therefore, dismiss all other policies and carriers outside of the implicated policy year, if it wishes to apply "vertical exhaustion."

Additionally, Muir misreads the *Viking Pump* decision.  The New York Court of Appeals did not hold that vertical exhaustion applied to the primary and umbrella layers, which were not at issue in that case.  The court stated that the Delaware Court held, "as a matter of New York law," the primary and umbrella layers were subject to horizontal allocation and that issue was not on appeal to the New York Court of Appeals.  See *Viking Pump*, *supra*, 27 NY3d at 254 and n. 2.  The New York Court of Appeals also observed that the umbrella layer in Viking Pump, provided by Liberty Mutual Insurance Company, contained a non-cumulation clause.  Id. at 252  Thus, the Viking Pump court did not address the issue of vertical exhaustion of the primary and umbrella layers.  The Companies' policy at issue, Policy No. UHL 0632, however, is an umbrella policy.  See July 2016 Puhala Declaration, Ex A.   This court, need not address these complex allocation issues, which, at best, are premature.  Plaintiff Muir has not established coverage and cannot establish coverage, as a matter of law.

## V.    UNDER NO CIRCUMSTANCES ARE THE LONDON COMPANIES REQUIRED TO PAY THE ENTIRE *MUIR* JUDGMENT OR EVEN A SIGNIFICANT PORTION THEREOF

Plaintiff Muir in her opening brief discusses the recent New York Court of Appeals decision *In re Viking Pump, Inc.,* 27 N.Y.3d 244 (2016), and argues that "New York Insurance Law § 3420 direct action enforcement provisions and recent New York Court of Appeals authority require the Continental and Harper/Assicurazioni Defendants to pay the entire Muir judgment from the 1976-1977 excess policies."  May 2016 Pl. Memo, Document 27-9, Page 14 of 20.  Muir further asserts "the total amount owed to the Plaintiff should be paid by the Continental and Harper/

---

[4] Dictionary.com defines "concurrent" as "something joint or contributory."

Assicurazioni Defendants' on an all sums and vertical basis." Id. at Page 19 of 20. Plaintiff seeks an order from this court "that Defendants Continental Insurance Company, Harper Insurance Limited and Assicurazioni Generali, SPA, pay her unsatisfied judgment of $5,856,171.85 from the multi-tier excess policies issued for the January 1, 1976 to January 1, 1977 policy year." Id. at Page 20 of 20.

Muir's requested relief seeking the "Harper/Assicurazioni Defendants" (also known as the "London Companies") and Continental Insurance Company pay her entire judgment fails as a matter of law. If the London Companies are obligated to pay any part of the Muir judgment, which they are not, that obligation is limited to, at most, a small fraction thereof.

### A. *Viking Pump* caps an insurance carrier's obligation to its policy limits and does not preclude the carrier's subsequent rights to contribution <u>from other implicated insurers.</u>

#### 1. *Viking Pump* caps the London Companies' potential liability at their policy limits.

Even if Plaintiff establishes coverage and the application of *Viking Pump*, the London Companies are not required to pay the entire Muir judgment. The *Viking Pump* court held that as a first step to the allocation process, the policyholder may "spike" its damages into one policy year; the insurance carrier's payment obligation, however, is subject to the carrier's policy limits. *In re Viking Pump, Inc.*, 27 N.Y.3d 244, 255 (2016). Plaintiff Muir contradicts her own assertion that the Companies must pay the "entire judgment," where she admits that the carrier's coverage obligation is confined to "the policy's monetary limits." May 2016 Pl. Memo, Document 27-9, Page 16 of 20. Regarding the first phase of the allocation process, the London Companies' obligation for the Muir judgment, if any, is capped at the Companies' policy limits in the 1976 policy year.

### 2. The London Companies' policy limits for the first $31 million in coverage in the 1976 policy year is only $333,898.40.

Significantly, nowhere in Plaintiff's brief does she mention the London Companies' policy limits. Plaintiff simply makes a vague reference to $100,000,000 in coverage in the 1976 policy year.   May 2016 Pl. Memo, Document 27-9, Page 7 of 20.  The London Companies' limits are neither discussed nor established in Plaintiff Muir's Statement of Material Facts.   Rather, improperly tucked away in the middle of the Duggan Declaration, Muir's counsel makes the incredible statement that the London Companies issued $29,625,000 in coverage in 1976.  May 2016 Duggan Declaration, Document 27-1, Page 3 of 5, ¶ 14.  The sole support for this proposition is the Duggan Declaration, Exhibit 13, which is a chart drafted by Hedman's former coverage counsel and provided to the London Companies during settlement talks in July 2012.   The Companies have previously explained during the course of prior summary judgment briefing that Plaintiff's counsel is reading Duggan Exhibit 13 incorrectly.[5]

The Hedman coverage chart at Duggan Exhibit 13 correctly distinguished between the entire "London Market Policy Limits" and the policy limits severally-subscribed to by the individual insurance companies, Harper and Generali.  The chart could not be any clearer on this point.

The relevant column in the chart is the "subscription limit" for "Harper" and "Assicurazioni Generali SPA."  The point of the chart was to establish, from Hedman's perspective, the Gulf & Western U.S. policy limits severally-subscribed to by Harper and Generali in order to have settlement talks regarding those involvements.  Muir's counsel, however, apparently cites to the

---

[5] See Case 1:14-cv-00585-RJA-HKS, Dec. 2015 Joint Response Memorandum, Document 133, Pages 82– 84 of 120, Defendants' Joint Response, ¶ 105 (discussing Duggan Dec. Ex. 85, reproduced as Duggan Dec. Ex. 13 in the Muir matter).

column labeled the "London Market Policy Limit" referring to the coverage severally-subscribed to by **all** of the companies in the London Market, of which Harper and Generali are only a fraction.

Of the first layer excess involvement, Harper and Generali, combined, severally-subscribed to only 50% of the London Market's 10% share of the $1 million policy limit, or a total of $50,000 in limits (i.e., $1 million policy limit x 10% London Market "order" x 50% share of the London Market "order" = $50,000.)  See Jul. 2016 SOMF ¶ 9.

Hedman's chart indicates that regarding the first five (5) million of excess coverage in the Gulf & Western, Industries, Inc. insurance program in the 1976 policy year, Harper only severally-subscribed to $41,670 in coverage in the first excess layer, and $119,918 in the second excess layer, for a total of $161,588.  Similarly, the chart indicates Generali only severally-subscribed to a total share of $49,973 in coverage for the first five (5) million in excess limits in 1976.[6]  (In this regard, we note Hedman's chart contains an error regarding Generali's coverage.  As discussed more fully below, Generali subscribed to $8,333 regarding to Policy UHL 0632, and not $10,000).  Accordingly, in 1976, for the first $5 million in excess insurance coverage, Harper and Generali's limit of liability, combined, according to Hedman's chart is approximately $211,561.  Thus, assuming the $1 million primary policy is available, for the first $6 million in loss, Harper and Generali's limits are only $211,561.

For the first $31 million in coverage in the 1976 policy year, [7] the chart indicates that the London Companies severally-subscribed to only $335,158 in total coverage.

---

[6] $1 million Aetna primary plus $1 million first excess layer plus $4 million second excess layer equals $6 million.
[7] $1 million primary plus $1 million first excess layer plus $4 million second excess layer, plus $5 million third excess layer, plus $10 million fourth excess layer, plus $10 million fifth excess layer equals $31 million.

Thus, even if Plaintiffs *Mineweaser*, *Nielson*, *Peace* and *Muir* were to establish that the London Companies' policies in the second and third excess layers have non-cumulation clauses, and Plaintiffs were allowed to spike the total of all of their damages in the 1976 policy year under *Viking Pump*, the most the Companies would have to pay for all four (4) matters in the first phase of a *Viking Pump* allocation would be $335,158, pursuant to Hedman's chart. They would then be able to reduce that amount by asserting their rights to contribution from the other insurers in this action. Harper and Generali's total limit of liability in the 1976 policy year is not $29,625,000 million and under no circumstance would the Companies be obligated to pay the full $5.8 million Muir judgment, or anything close to that amount.

**i)     Muir does not cite to the Harper and Generali policies in 1976, which establish that the Companies' total limits of liability is only $333,898.40 for the first $31 million in coverage.**

Additionally, Muir does not cite to the London Companies' policy documents – all of which have been produced to Plaintiff's counsel in the *Mineweaser* matter. In fact, the only policy subscribed to by the London Companies cited to by Plaintiff Muir is Policy UHL 0632, effective January 1, 1976 to January 1, 1977. As discussed extensively in our prior briefing and herein, the Companies' total limit of liability regarding that policy is only $50,000. When the Companies' total limits of liability is examined under the actual policy language, their share of limits for the first $31 million in coverage in 1976 is only approximately $333,898.40. [8]  (Jul. 2016 SOMF ¶11).

Additionally, the London Companies observe that the only London Company policy cited to by Muir as containing a non-cumulation clause is Policy UHL 0632. Accordingly, this is the

---

[8]As explained in our prior briefing, Hedman's coverage chart contains a slight error. Generali's share of Policy UHL 0632 is $8,330 and not $10,000 as listed in the chart. See Case 1:14-cv-00585-RJA-HKS, December 2015 Memorandum, Document 124, Page 24 of 44, n. 4; Jul. 2016 SOMF ¶ 9.

only policy in which Muir could even potentially attempt to apply the "all sums" allocation under *Viking Pump*.

### 3. The London Companies share of the Muir Judgment under *Viking Pump* may be less than $33,000

The London Companies calculate that if the $5.8 million Muir judgment is spiked into the 1976 Policy year (assuming Plaintiff Muir can successfully void the Companies valid settlement agreement, defeat all of their coverage defenses, establish that the applicable primary coverage is properly exhausted, establish that the London Companies' coverage in the second and third excess layers contain a non-cumulation clause and establish the applicability of Viking Pump, the Companies' obligation for the first phase of allocation would be approximately $227,345.[9] However, the London Companies' payment obligation would be far less even if the *Viking Pump* decision applied.

The *Viking Pump* court acknowledged that under an "all sums" allocation, the insurance company's obligation is reduced by contribution from the other implicated insurers. See *Viking Pump, supra.* 27 N.Y.3d at 255-56 (providing "the insurer against whom the insured recovers" may then "seek contribution from the insurers that issued the other triggered policies"). The Viking Pump court did not discuss the mechanics of that contribution; nevertheless it made clear that an insurance company's payment obligation is established under a two-step allocation process. Thus, assuming *arguendo* Muir is able to i) void the Companies' valid settlement agreement, ii)

---

[9] The London Companies have approximately $46,200 remaining limits in the 1976 first excess policy, Policy No. UHL 0632. See Jul. 2015 Puhala Declaration Exhibit O, Document 100-20 and Jul. 2016 SOMF ¶ 16. The Companies have $159,998.40 in limits in the 1976 second excess layer Jul. 2016 SOMF ¶ 10. The Companies' share of the third excess layer is, approximately, 2.47%. Jul. 2016 SOMF ¶17. Thus the Companies' share of the remaining $856,171 Muir judgment is $21,147 ($856,171 x 2.27% = $21,147) and $46,200 + $159,998.40 + $21,147 = $227,345.

defeat all of the Companies' coverage defenses, iii) establish applicable non-cumulation clauses in all policies in 1976, iv) establish exhaustion of the primary policies and v) otherwise establish the applicability of *Viking Pump* -- when the allocation process is complete, the London Companies' share of the Muir judgment is likely to be less than $33,000, depending on the contribution method selected by the court.[10]   Indeed, the Companies' entire liability for all of the claims at issue, *Mineweaser*, *Neilson*, *Peace* and *Muir*, may be less than $45,000.[11]   There is simply no basis supporting Plaintiff's contention that the London Companies are obligated to pay $5.8 million for the Muir Judgement or anything close to that amount – even assuming Plaintiff Muir can establish coverage under the London Companies' policies.

**B.  New York Insurance Law § 3420(a) does not provide an allocation method, let alone, require "all sums" allocation.**

As discussed in the London Companies' prior briefing, New York Insurance Law § 3420(a) is not an "allocation" statute and does not otherwise require the application of the "all sums" methodology.[12]   Moreover, it certainly does not mandate that the London Companies must pay more than their policy limits.  See New York Insurance Law § 3420(a)(2)(limiting an insurance carriers' maximum obligation to "the amount of the applicable limit of coverage under such policy").

---

[10] If the court were to base contribution on a pro-rata by time allocation over the implicated policy years and assuming the Companies seek contribution from the 1970 to 1975 policy years -- $227,238/7 = $32,463 allocated to each policy year, including 1976.  The London Companies' share of the Muir judgment under *Viking Pump's* allocation methodology would be less than $33,000.

[11] Accounting for the *Muir* matter, depending on the court's application of the non-cumulation clause, the London Companies may only have $102,753 in remaining limits in the 1976 policy year for the first $31 million in coverage.  Assuming contribution based on pro-rata by time and a trigger period of 10 years, 1967 to 1976, the London Companies would be obligated to pay an additional $10,275 for the *Mineweaser*, *Nielson* and *Peace* claims, combined, before exhausting their limits.

[12] See 1:14-cv-00585-RJA-HKS, Dec. 2015 Memorandum, Document 124, Pages 6-17 of 44.

## VI.    PLAINTIFF INCORRECTLY DESCRIBES THE ATTACHMENT POINT OF THE LONDON COMPANIES' POLICIES

Plaintiff Muir makes a confusing argument as to the attachment of London Companies' policies, which is factually incorrect.  Plaintiff argues,

> Under their policy's Declaration terms, Defendants Continental and Harper/Assicurazioni's schedule one primary policy with a $1,000,000 aggregate limit for the 1976-1977 policy year, i.e., the Aetna policy No. 1995548SRA…  The Defendants' excess policies explicitly declare that their obligation to pay is governed by the payment of the limits of the underlying scheduled policy, in this case the Aetna primary policy.

May 2016 Memorandum, Doc. No. 27-9, Page 19 of 20.  Plaintiff's argument is confusing because she does not indicate to which London Company policy she is referring.  The Companies admit that in 1976, Policy No. UHL 0632 is excess of an underlying $1 million primary policy.  Plaintiff, however, does not discuss any other London Company policies, including the limits underlying those policies and whether those involvements contain a non-cumulation clause.

As discussed in our briefs in the *Mineweaser*, *Neilson* and *Peace*, the London Companies do not agree that Aetna Policy No. 1995548SRA, as relied upon by Plaintiff Muir, is properly exhausted.  Even if Hedman is an insured under the Aetna policies, the Aetna policy issued in Canada is the applicable primary policy and not Aetna U.S. Policy No. 19995548SRA.[13]  The London Companies do not concede that their coverage is excess of the Aetna Canada primary policy.  The Companies merely assert that of the two Aetna policies at issue, the U.S. policy and the Canada policy, the Canada policy applies.    Plaintiff has not shown that the Aetna Canada primary policy is exhausted.

---

[13]See Case 1:14-cv-00585-RJA-HKS, Dec. 2016 Memo), Document 124, Page 41 of 44.  See also, Case 1:14-cv-00585-RJA-HKS, Exhibit N, Document 124-7, p. 193 of 234 (discussing 1978 Aetna Policy, Endorsement No. 31, and applicability of the Canadian coverage).

## CONCLUSION

For the above reasons, the London Companies respectfully request that Plaintiff Muir's summary judgment motion be denied in its entirety.

Dated:  22 July 2016

FORAN GLENNON PALNADECH PONZI & RUDLOFF PC

BY:   /s/ Ronald Puhala

Ronald Puhala, Esq.,
120 Broadway, Suite 1130
New York, New York 10271
(212) 257.7100
*Attorneys for Defendants/Third Party Plaintiffs Harper Insurance Limited, f/k/a Turegum Insurance Company, and Assicurazioni Generali, SPA*