**MENDES & MOUNT, LLP**
750 Seventh Avenue
New York, NY 10019
Eileen T. McCabe, Esq.
Jaimie H. Ginzberg, Esq.
Rachel H. Bevans, Esq.
(212) 261-8000
eileen.mccabe@mendes.com
jaimie.ginzberg@mendes.com
rachel.bevans@mendes.com

*Attorneys for Continental Insurance Company,*
*Individually and as Successor to Certain Liabilities*
*of Harbor Insurance Company*

## UNITED STATES DISTRICT COURT

### for the

### Western District of New York

| | | |
|---|---|---|
| NANCY M. MUIR, Executrix of the Estate of JOSEPH L. MUIR, Deceased | ) ) ) | Civil Action No.:16-cv-89 |
| *Plaintiff* | ) ) | |
| v. | ) ) | |
| LAMORAK INSURANCE COMPANY, f/k/a ONE BEACON AMERICA INSURANCE COMPANY, et al. | ) ) ) ) | |
| *Defendants* | | |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BY CONTINENTAL INSURANCE COMPANY, INDIVIDUALLY AND AS SUCCESSOR TO CERTAIN LIABILITIES OF HARBOR INSURANCE COMPANY**

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................. 1

**COUNTERSTATEMENT OF FACTS** ........................................................ 2

   I.   Relevant Policy Language ............................................................... 2

   II.   Coverage Dispute ......................................................................... 3

   III.   Settlement Agreement .................................................................. 4

**ARGUMENT** ............................................................................................. 4

   I.   PLAINTIFF HAS NO STANDING UNDER NEW YORK LAW TO PURSUE A CLAIM AGAINST CONTINENTAL. .............................................. 5

   II.   *VIKING PUMP* DOES NOT ALTER PLAINTIFF'S BURDEN TO ESTABLISH HEDMAN'S RIGHTS TO COVERAGE UNDER THE ALLEGED CONTINENTAL POLICIES ................................................................. 9

     A.   *Viking Pump* Does Not Impact Plaintiff's Burden to Prove that Hedman is a Named Assured Under Any Alleged Continental Policy................................. 11

     B.   *Viking Pump* Does Not Apply Where the Insured (or Putative Insured) Has Failed to Establish that a Policy (or Policies) is Triggered ................................. 12

     C.   *Viking Pump* Does not Alter Plaintiff's Burden to Establish Full and Proper Underlying Exhaustion ..................................................... 15

     D.   *Viking Pump* Does Not Impact Plaintiff's Burden to Establish That Mr. Muir's Alleged Bodily Injury Was Unexpected and Unintended ......................... 18

   III.   *VIKING PUMP* DICTATES THAT THE "PRIOR INSURANCE AND NON CUMULATION  OF LIABILITY" CONDITION IN THE CONTINENTAL POLICIES MUST BE ENFORCED AS WRITTEN ............................................ 20

     A.   The "Prior Insurance and Non Cumulation of Liability" Condition Reduces the Limits Under the Alleged 1976 Continental Policy(ies)................................. 20

     B.   Under *Viking Pump* and the Plain Language of the Continental Policies, Whether There are  Amounts Due Under Any Policies Issued Prior to 1976 Is a Significant Issue of Material Fact …………………………………………………………………………………22

   IV.   AT A BARE MINIMUM, PLAINTIFF'S MOTION IS PREMATURE...................... 24

**CONCLUSION** ............................................................................................ 25

## TABLE OF AUTHORITIES

**Cases**

*American Home Products Corp. v. Liberty Mutual Ins. Co.*,
748 F.2d 760 (2d. Cir. 1984).................................................................. 13

*Borg-Warner Corp. v. Insurance Co. of North America*,
174 A.D.2d 24 (3d Dep't 1992) ............................................................. 9

*Brooks v. Prack*,
77 F. Supp. 3d 301 (W.D.N.Y. 2014) ................................................... 24

*Carpenter v. Churchville Greene Homeowner's Ass'n*,
2011 U.S. Dist. LEXIS 17042 (W.D.N.Y. 2011) ................................ 24

*Coleman v New Amsterdam Cas.*
*Co.*, 247 N.Y. 271 (1928) ..................................................................... 6

*Commonwealth Land Title Ins. Co. v. Am Signature Servs., Inc.*,
2014 U.S. Dist. LEXIS 22172 (E.D.N.Y. 2014)................................... 6

*Consolidated Edison Co. v. Allstate Ins. Co.*,
98 N.Y.2d 208, (2002) .................................................................... 9, 17

*Consorti v. Owens-Corning Fiber Glass Corp.*, 8
6 N.Y.2d 449 (1995) ..................................................................... 14,15

*Continental Cas. Co. v. Employers Ins. Co. at Wausau*,
60 A.D.3d 128 (1st Dep't 2008), leave to app. denied, 13 N.Y.3d 710 (2009) ("*Keasbey*") ....... 13

*Continental Casualty v. Rapid-American Corp.*,
80 N.Y.2d 640 (1993) .................................................................. 13, 14

*E.I. du Pont de Nemours & Co. v. Stonewall Ins. Co.*,
2008 WL 7020668 (Del. Super. Ct. Aug. 14, 2008).............................. 22

*Emmons Industries, Inc. v. Liberty Mut. Fire Ins. Co.*,
545 F.Supp. 185 (S.D.N.Y. 1982) ........................................................ 9

*Florio v. Gen. Accident Fire & Life Assurance Corp.*,
396 F.2d 510 (2d Cir. 1968)................................................................... 6

*Ford v. Principal Recovery Group, Inc.*,
2011 U.S. Dist. LEXIS 111535, *11 (W.D.N.Y. 2011) ...................... 24

*Forest Laboratories Inc. v. Arch Insurance Co.*,
38 Misc.3d 260, 267 (N.Y. Sup. 2012), *aff'd.* 116 A.D.3d 628 (N.Y. App. Div. 2014) ............. 16

*Hiraldo v. Allstate Ins. Co.*,
5 N.Y.3d 508 ................................................................................................................. 21

*Hudson River Sloop Clearwater, Inc. v. Dept. of Navy*,
891 F.2d 414, 422 (2d Cir. 1989) .................................................................................. 24

*In Re New York City Asbestos Litigation*,
921 N.Y.S.2d 466 (Supreme Court, New York County 2011)… …………………………….…15

*In Re Viking Pump, Inc. & Warren Pumps LLC*,
27 N.E.3d 344 (2016) ("*Viking Pump*") ................................................................... passim

*Indian Harbor Ins. Co. v. City of San Diego*,
972 F. Supp. 2d 634 (S.D.N.Y. 2013) .............................................................................. 8

*JCD Int'l Gem Corp. v. Evanston Ins. Co.*,
1995 U.S. Dist. LEXIS 5407 (S.D.N.Y. 1995) ................................................................ 6

*Lang v Hanover Ins. Co.*,
3 N.Y.3d 350, 354 (2004) ................................................................................................ 6

*Liberty Mutual Ins. Co. v. Treesdale, Inc.*,
418 F.3d 330 (3d. Cir. 2005) ........................................................................................ 21

*Lippe v. Bairnco Corp.*,
9 Fed. Appx. 274, 282 (2d Cir. 2004) .............................................................................. 7

*Maryland Cas. Co. v. W.R. Grace & Co.*,
1996 U.S. Dist. LEXIS 2963, *21 (S.D.N.Y. March 12, 1996) .................................... 9

*Mehdi Ali v. Federal Ins. Co.*,
719 F.3d 83 (2d Cir. 2013) ........................................................................................... 16

*Munzer v. St. Paul Fire & Marine Ins. Co.*,
145 A.D.2d 193, 199 (3d Dep't 1989) ............................................................................. 9

*Nesmith v. Allstate Insurance Co.*,
24 N.Y. 3d 520 (2014) .................................................................................................. 21

*Roman Catholic Diocese of Brooklyn v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
21 N.Y.3d 139, 969 N.Y.S.2d 808 (2013) ................................................................... 17

*Sage Realty Corp. v. Insurance Co. of N. America*,
34 F.3d 124, 128 (2d Cir. 1994) ................................................................................... 24

*Schneider v. Canal Ins. Co.,*
1999 U.S. Dist. LEXIS 13618 (E.D.N.Y. 1999)............................................................. 8

*Spadaro v. Newark Ins. Co.*,
21 A.D.2d 226, 230 (4th Dep't 1964) ............................................................................ 6

*Sperling v. Great American Ins. Co.,*
7 N.Y.2d 442 (1960) ....................................................................................................... 6

*Wenig v. Glens Falls Ind. Co.,*
 294 N.Y. 195, 198 (1945) .............................................................................................. 6

*Whelehan v. Bank of Am. Pension Plan for Legacy Companies-Fleet-Traditional Benefit*,
5 F. Supp. 3d 410, 420-421  (W.D.N.Y. 2014).............................................................. 24

**<u>Statutes</u>**
New York Insurance Law § 3420 .......................................................................... 1, 5, 6, 8

**<u>Rules</u>**
Federal Rule of Civil Procedure 56(d)........................................................................... 23

## PRELIMINARY STATEMENT

Defendant Continental Insurance Company, Individually and as Successor to Certain Liabilities of Harbor Insurance Company, sued improperly herein as "Continental Insurance Company ('CNA')" ("Continental"), by and through its undersigned counsel, respectfully submits this Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.

The instant case involves a judgment obtained by Plaintiff against Hedman Resources Limited ("Hedman") that has gone unsatisfied ("Muir Judgment"). Continental's only purported relationship to Plaintiff is as an alleged excess insurer of Hedman. In such circumstances, the law in New York – both statutory and otherwise – is abundantly clear. First, New York Insurance Law § 3420 ("§ 3420") provides an extremely limited cause of action which, at best, only permits Plaintiff to step into the shoes of Hedman and pursue whatever rights Hedman has against Continental, if any. The summary relief sought by Plaintiff's motion entirely ignores that principle. Here, Hedman has <u>no</u> rights against Continental as a result of a duly executed settlement agreement entered into between Hedman and Continental (the "Agreement") whereby Continental obtained a full release from Hedman from any and all obligations, claims and liability of any kind. Thus, standing in Hedman's shoes as required under New York law, Plaintiff likewise has no rights as against Continental and cannot pursue a claim under §3420.

Second, assuming *arguendo* that the Agreement does not on its face render Plaintiff without standing to bring the current action against Continental (which it does), New York law is also clear that, standing in the shoes of Hedman, Plaintiff is required to establish entitlement to coverage under the alleged Continental policies (which it has unquestionably not done). Indeed, Plaintiff's motion is riddled with conclusory statements that are in reality intensely disputed issues of fact. Such issues of fact include but are not limited to: whether Hedman is a "named

insured" under the alleged Continental policy at issue in the motion; whether all applicable underlying policies have been fully and properly exhausted; and whether there has been injury during the Continental policy period at issue in the motion; and whether some or all of the policy limits may have otherwise been exhausted by prior payment of claims to Gulf & Western.

Nonetheless, Plaintiff's motion necessarily – and improperly – assumes that all of the foregoing issues have been established. This is wrong. In reality, the central focus of Plaintiff's motion – allocation of damages – is only ripe for consideration after the foregoing standing and coverage-related issues are actually resolved. Plaintiff's argument relies almost solely on the Court of Appeals' recent decision in *In Re Viking Pump, Inc. & Warren Pumps LLC*, 27 N.E.3d 344 (2016) ("*Viking Pump*"). Such reliance is both substantively and procedurally misplaced and *Viking Pump* in no way alters Plaintiff's burden to establish entitlement to coverage under any alleged Continental policy. In fact, *Viking Pump* reinforces Plaintiff's burden – which it has not, and cannot, meet in this case.

Finally, at a bare minimum, in a case where there has not been a Rule 26 conference and Plaintiff has not even filed a Rule (26) disclosure statement, let alone engaged in the requisite discovery, Plaintiff's motion for summary judgment is inherently premature.

Accordingly, the relief sought by Plaintiff is both substantively meritless and procedurally improper at this stage in the litigation as significant, material questions of law and fact exist that precludes summary judgment in Plaintiff's favor. Therefore, Continental respectfully requests the Court deny Plaintiff's Motion for Summary Judgment in its entirety.

## **COUNTERSTATEMENT OF FACTS**

I.     Relevant Policy Language

Continental Policy No. 119281, with the policy period of January 1, 1976 to January 1, 1977 contains the below relevant provisions.

"COVERAGE

The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the insured for all sums which the insured shall be obligated to pay by reason of the liability

    (a) imposed upon the insured by law, or
    (b) assumed under contract or agreement by the Named Insured and/or any officer, director, stockholder, partner or employee of the Named Insured while acting in his capacity as such,

for damages on account of (i) Personal Injuries; (ii) Property Damage; (iii) Advertising Liability; caused by or arising out of each occurrence happening anywhere in the world during the policy period."

*See* Bevans Decl., Ex B.

 "THE POLICY IS SUBJECT TO THE FOLLOWING DEFINITIONS.

5. OCCURRENCE

The term "Occurrence" wherever used herein means an accident, including continuous or repeated exposure to conditions, which results in personal injury, property damage or advertising liability neither expected nor intended from the standpoint of the Insured."

*See* Bevans Decl., Ex B.

 "THE POLICY IS SUBJECT TO THE FOLLOWING CONDITIONS

C. PRIOR INSURANCE AND NON CUMULATION OF LIABILITY

It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Insured prior to the inception date hereof the limit of liability hereon as stated in item 2 of the Declarations shall be reduced by any amounts due to the Insured on account of such loss under such prior insurance."

*See* Bevans Decl., Ex B.

II.    <u>Coverage Dispute</u>

In 2005, Hedman began asserting it was entitled to coverage under certain Continental policies issued to Gulf & Western Industries, Inc. ("Gulf & Western (US)"). Statement of Material Facts ("SOF") ¶ 8. Continental raised numerous coverage defenses in response, including contesting Hedman's allegations that it was a named assured under the policies. SOF ¶ 9, 15. The corporate successor of Gulf & Western (US) continues to set forth that it has no

relationship with Hedman through motion practice in the Supreme Court of New York, Erie County. SOF ¶ 12. Hedman itself admits that its claim for coverage was weak, at best. SOF ¶ 17.

Continental also contested exhaustion on numerous fronts, including whether there was full and proper exhaustion of the underlying primary policies issued by Travelers and on the basis that Travelers issued two lines of primary coverage – a domestic (U.S) line of coverage *and* a separate Canadian line of primary coverage – but only allocated alleged Hedman claims to the domestic line of coverage. SOF ¶ 16. Numerous other coverage defenses also existed, including whether Hedman complied with the terms and conditions of the policies. SOF ¶ 18 – 20.

III.    Settlement Agreement

Despite the coverage disputes made abundantly clear to Hedman and Lipsitz & Ponterio LLC, Hedman and its counsel aggressively pursued insurance coverage under the Gulf & Western (US) policies. Ultimately, Hedman approached the alleged excess insurers of Hedman through the Gilbert LLP firm to engage in discussions to resolve the coverage dispute and release its legal right to assert a claim for coverage if the parties could negotiate an acceptable settlement. SOF ¶ 18. Despite disputing its claims, Continental was aware the parties could spend millions in coverage litigation if the dispute remained ongoing. SOF ¶ 21.

The negotiations between the parties lasted throughout 2012, and concluded with Continental's Agreement with Hedman in December 2012. SOF ¶ 22. Through this Agreement, Continental obtained a full and final release from Hedman from any and all obligations, claims and liability of any kind, if any, in exchange for a lump sum payment to Hedman for $1,125,000. SOF ¶ 1823.

**ARGUMENT**

As an initial matter, Plaintiff's Motion for Summary Judgment references Motions for Summary Judgment filed in three separate actions: *Mineweaser v. One Beacon America*

*Insurance Co., et al.*, No. 14-cv-585; *Powers (Neilson) v. One Beacon America Insurance Co., et al.*, No. 14-cv-1093; and *Peace v. One Beacon America Ins. Co., et al.*, No. 15-cv-177. Continental disagrees that these motions "feature identical factual and legal issues" and disputes that Plaintiff may incorporate by reference arguments contained in motions filed by other plaintiffs. However, to the extent Plaintiff relies on arguments filed in other motions, and to the extent the Court accepts such incorporation, Continental likewise incorporates its Oppositions to the aforementioned motions, including all documentation and exhibits cited therein.

Otherwise, the central argument set forth in Plaintiff's motion is that the New York Court of Appeals' recent decision in *Viking Pump* entitles her to a ruling that the excess policies in the alleged 1976- 1977 policy year are responsible for the entire Muir Judgment up to the respective policy limits. This is patently inaccurate. The Court of Appeals' decision in *Viking Pump* has no bearing on the statutory requirements under §3420 and, in fact, reaffirms that clear, unambiguous terms of a contract must be enforced as written. It follows that, under *Viking Pump*, as Plaintiff has failed to establish she is entitled to coverage under any Continental policy, summary judgment must be denied.

## I.    PLAINTIFF HAS NO STANDING UNDER NEW YORK LAW TO PURSUE A CLAIM AGAINST CONTINENTAL.

Plaintiff unequivocally asks this Court to enter summary judgment in her favor with respect to Count One of her Complaint under "New York Insurance Law §3420 against Defendants…Continental…and…Harper/Assicurazioni…for the full recovery of the value of her lump sum state court judgment, together with interest thereon." Plaintiff's Memorandum of Law in Support of the Motion for Summary Judgment, dated May 26, 2016 ("Mot.") at 2. However, glaringly absent from Plaintiff's motion is any reference to well-established New York law that §3420 only permits the injured claimant to assert a claim against a tortfeasor's insurer "under

limited circumstances." *Lang v Hanover Ins. Co.*, 3 N.Y.3d 350, 354 (2004); *see also Commonwealth Land Title Ins. Co. v. Am Signature Servs., Inc.*, 2014 U.S. Dist. LEXIS 22172 at *19 (E.D.N.Y. 2014)("Section § 3420 grants a limited cause of action… if Section § 3420 does not apply, then plaintiffs have no cause of action under common law"). This alone requires that Plaintiff's motion be denied for several reasons.

*First,* it cannot be disputed that §3420 only permits the injured claimant to "stand in the shoes" of the purported policy holder with rights no greater and no less. *See Lang v Hanover Ins. Co.*, 3 N.Y.3d 350, 354-355 (2004), *citing Coleman v New Amsterdam Cas. Co.*, 247 N.Y. 271, 275 (1928); *see also Wenig v. Glens Falls Ind. Co.,* 294 N.Y. 195, 198 (1945); *Sperling v. Great American Ins. Co., 7* N.Y.2d 442 (1960) ("[i]t is conceded that plaintiff's rights against insurer… are no greater than [the insured's]"); *Spadaro v. Newark Ins. Co.*, 21 A.D.2d 226, 230 (4th Dep't 1964); *JCD Int'l Gem Corp. v. Evanston Ins. Co.*, 1995 U.S. Dist. LEXIS 5407 (S.D.N.Y. 1995)("[i]n an action pursuant to N.Y. Ins. Law. § 3420, the claimant stands in the shoes of the insured and 'must abide by any applicable provisions of the policy")(quoting *Florio v. Gen. Accident Fire & Life Assurance Corp.,* 396 F.2d 510, 513 (2d Cir. 1968)). Thus, Plaintiff asserting a direct action under § 3420 is only entitled to relief that Hedman, the purported "insured," would be entitled.

As aforementioned, Hedman and Continental entered into an Agreement in which Continental paid a lump sum in exchange for a final release from any and all obligations, claims and liability of any kind. Pursuant to this Agreement, any rights Hedman may have had (which were heavily disputed in the first place) were extinguished in 2012. Thus, Hedman would not have a basis for pursuing a claim against Continental. Standing in the shoes of Hedman more than three years later, Plaintiff likewise has no rights with regard to the at-issue policy(ies).

*Second*, it also cannot be disputed that §3420 affords an extremely limited cause of action that becomes viable only when (1) the injured third-party obtains a judgment against the tortfeasor; (2) the injured third-party serves the tortfeasor and the alleged insurers with the judgment; and (3) the judgment remains unsatisfied for at least 30 days. Yet, Plaintiff attempts to invoke §3420 to enforce a judgment entered in favor of Mr. Muir against Hedman no earlier than November 13, 2015. At the same time, Plaintiff alleges that in 2012, Continental entered into an agreement with Hedman that vitiated Hedman's rights (if any) under any Continental policies, and that this agreement improperly impeded upon the "rights" of Plaintiff to enforce the judgment subsequently obtained against Hedman as against Continental.

Indeed, Plaintiff's Complaint alleges that Continental settled with Hedman **three years prior** to entry of the judgment it now seeks to enforce as against it. Plaintiff's own allegations establish that Plaintiff did not have a valid judgment at the time Continental's respective settlements with Hedman were entered. In turn, the statutory requirements and limitations of New York Insurance Law §3420 bar Plaintiff from retroactively creating an interest in the Continental policies that were the subject of the 2012 Agreement with Hedman. Moreover, at the time the Agreement with Hedman was executed, Plaintiff's potential cause of action against Hedman did not exist. *Lippe v. Bairnco Corp.,* 9 Fed. Appx. 274, 282 (2d Cir. 2004) (finding "[u]nder current New York law, a cause of action accrues in a toxic-tort case not on the date of exposure, but rather on 'the date of discovery of the injury by the plaintiff or… the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff whichever is earlier"). Here, Mr. Muir was not even diagnosed with mesothelioma until July 2014, nearly 20 months after the Hedman settlement. It follows that Plaintiff has no

standing to contest Continental's respective settlement agreements with Hedman as a matter of law.[1]

     *Third*, §3420 at the outset provides as follows: "No policy or contract insuring against liability for injury to person… shall be issued or delivered in this state, unless it contains in substance the following provisions: (1) A provision that the insolvency or bankruptcy of the person insured, or the insolvency of the insured's estate, shall not release the insurer from the payment of damages for injury sustained or loss occasioned during the life of and within the coverage of such policy or contract." §3420(a)(1). Some New York courts have expressly interpreted the language of §3420 to limit its application to insurance policies "issued or delivered within the state." *See Schneider v. Canal Ins. Co.,* 1999 U.S. Dist. LEXIS 13618 (E.D.N.Y. 1999) ("In order for statutory rights and obligations created by [§3420] to apply to a given policy, that policy must have been issued or delivered in New York."); *Indian Harbor Ins. Co. v. City of San Diego*, 972 F. Supp. 2d 634 (S.D.N.Y. 2013) (finding reasonable inference from the record that policy issued outside of New York). Here, Plaintiff's motion for summary judgment does not address that Continental Policy No. 119281 was executed in Dallas, Texas. and delivered to Gulf & Western Industries, Inc. at a Houston, Texas address. *See* Bevans Decl., Ex. B at CNA0018 – CNA0019. As §3420 only applies to policies issued or delivered in New

---

[1] Plaintiff expressly asserts that she is moving  for summary judgment solely with respect to Count I of her Complaint, ignoring the fact that she has alleged a second Count headed as follows: "The Defendants' transfer of insurance funds to Hedman are fraudulent conveyances violating the New York Debtor Creditor Law." Tellingly, this Count relates to the threshold issue of standing, which Plaintiff knows is disputed. Unless Plaintiff intends to dismiss Count II of her Complaint (which would necessitate dismissal of the entire action under §3420), Plaintiff cannot circumvent her own allegations as a means to prevail on an inherently flawed and premature motion for summary judgment. In this regard, it should also be noted that Plaintiff's motion also wrongly assumes other requirements of §3420 are established, including but not limited to that Hedman was insolvent at the time of the Agreement (which it was not).

York, there is an additional dispute as to whether Plaintiff is precluded as a matter of law from proceeding against Continental.

Ultimately, Plaintiff's motion for summary judgment entirely fails to address, *inter alia,* the foregoing threshold standing issues and, accordingly, Continental respectfully submits that Plaintiff's motion must be denied in its entirety.

## II. *VIKING PUMP* DOES NOT ALTER PLAINTIFF'S BURDEN TO ESTABLISH HEDMAN'S RIGHTS TO COVERAGE UNDER THE ALLEGED CONTINENTAL POLICIES

Even if the Agreement did not bar coverage for Hedman (and by extension, Plaintiff) under any alleged Continental policies (which it does), New York law is well settled that the insured (or alleged putative insured) is required to establish coverage under an insurance policy. *Consolidated Edison Co. v. Allstate Ins. Co.,* 98 N.Y.2d 208, 224 (2002)*,* 98 N.Y.2d at 218 (2002); *Maryland Cas. Co. v. W.R. Grace & Co*., 1996 U.S. Dist. LEXIS 2963, *21 (S.D.N.Y. March 12, 1996); *Emmons Industries, Inc. v. Liberty Mut. Fire Ins. Co.*, 545 F.Supp. 185, 188 (S.D.N.Y. 1982); *Borg-Warner Corp. v. Insurance Co. of North America*, 174 A.D.2d 24, 31 (3d Dep't 1992); *Munzer v. St. Paul Fire & Marine Ins. Co*., 145 A.D.2d 193, 199 (3d Dep't 1989).

Here, it cannot be disputed that in order to establish coverage under any alleged Continental policy(ies), Plaintiff must demonstrate, *inter alia,* (1) Hedman is a named assured under the policies; (2) injury-in-fact took place during the alleged Continental policy period(s); (3) all underlying primary coverage issued by Travelers has been fully and properly exhausted; and (4) Hedman did not expect or intend the personal injury suffered by Plaintiff.[2] In fact, Plaintiff acknowledges through her motion for summary judgment that these issues are conditions precedent to coverage. *See, e.g.* Mot. at 2, 10, and 12. However, Plaintiff relies on

---

[2] Plaintiff has likewise not demonstrated that Hedman complied with all additional terms and conditions of its policies, including but not limited to the notice, assistance and cooperation, ultimate net loss and other insurance clauses.

9

unsupported, contested allegations and motions for summary judgment filed in other cases to conclude these pre-requisites to coverage under any alleged Continental policy have been established. *See* Mot. at 3. Simply put, relying on contested evidence and motions for summary judgment that have been vociferously opposed in other cases only highlights the fatal impropriety of Plaintiff's instant motion.[3] Nor does *Viking Pump* have any bearing on the significant factual disputes that exist with respect to Plaintiff's entitlement to coverage.

In addition, as purported proof that she is entitled to full recovery of the $5,856,171.85 Judgment from Continental and "Harper/Assicurazioni", Plaintiff has attached to her motion two alleged charts produced by other parties in this litigation. It is Continental's position that these charts are, at best, incomplete and that they in no way establish the limits of any 1976 Continental (or "Harper/Assicurazioni") policies (let alone "a total of $100,000,000 in limits" as asserted in Plaintiff's motion). Continental also disputes that these charts establish the amount of underlying coverage which must be exhausted before the any 1976 Continental policies can even potentially be called upon. As a practical matter, even if Plaintiff could establish (1) full and proper underlying exhaustion of all primary policies (which it has not; (2) that Hedman is a named insured under the alleged Continental policies (which it has not); (3) that the alleged 1976 Continental policies are triggered (which it has not); and (4) how much in Continental limits remain (if any) in the 1976 year after reduction to account for amounts due from prior insurance (which it has not), Continental would only – at most - be liable to the extent of the limits of liability as set forth in the Continental policies.

---

[3] As note above, to the extent Plaintiff has incorporated by reference the motions for summary judgment filed in the three other cases captioned above (*see supra* at ), albeit improper, Defendants likewise incorporate by reference their Oppositions thereto, any documents and/or exhibits cited therein, and any motions affirmatively filed by Continental in those cases (including various motions to strike).

### A. *Viking Pump* Does Not Impact Plaintiff's Burden to Prove that Hedman is a Named Assured Under Any Alleged Continental Policy

Despite Plaintiff's assertion it has "demonstrated conclusively by documentary evidence in the record" that "Hedman, as a majority-owed subsidiary of Gulf & Western, at all time relevant to the *Muir* case, was entitled to coverage under the excess policies issued by the Defendants," (Mot. at 4), any such alleged documentary evidence is disputed and whether or not Hedman is a named insured under any alleged Continental policy remains a substantial and material issue of fact.

Significantly, Plaintiff fails to address that Gulf & Western itself disputes the purported corporate history of Hedman that Plaintiff has self-servingly (and incorrectly) deemed "established." Mot. at 3. At this time, there is ongoing litigation in the Supreme Court of New York, Erie County (in which Plaintiff's counsel's law firm has record representation) regarding Hedman's purported relationship to Gulf & Western Industries, Inc., if any. Specifically, in *Merle C. Chapin v. Asbestos Corp., Ltd.*, Index No. 802850/2015, Supreme Court of New York, Erie County and *Samuel Matikosh v. Asbestos Corp., Ltd.,* Index No. 809946/2015, Supreme Court of New York, Erie County, Gulf+Western, Inc. n/k/a TCI Pacific Communications, Inc. has moved to dismiss both complaints on the grounds that Hedman was <u>never</u> a subsidiary of the company. As "Gulf & Western Industries, Inc." is the named assured in the alleged Continental policy(ies), and Plaintiff asserts this action under the apparent theory that Hedman is entitled to coverage under those policies issued to Gulf & Western Industries, Inc., there can be no doubt that a material issue of fact exists as to the corporate relationship between Gulf & Western Industries, Inc. and Hedman. In fact, Plaintiff's counsel moved to conduct discovery on this very issue before the state court and, upon information and belief, such discovery remains ongoing. SOF ¶ 12.

Notwithstanding what is at issue in the state court action discussed above, as to the policy(ies) at issue in this litigation, the evidence supports that Hedman was not covered under the alleged Continental policy(ies). Historical records establish that Hedman purchased its own line of insurance coverage until at least 1982. SOF ¶ 13. Logic dictates a small company like Hedman would not purchase and pay premiums for insurance coverage if it was insured under the alleged Continental policy(ies). Likewise, there is no indication in the 1967 stock purchase agreement between Hedman and G&W Canada that the parties intended for Hedman to be added to G&W Canada's insurance program - let alone Gulf & Western (US)'s. SOF ¶ 10. The parties to such agreement would have surely included reference to insurance coverage as part of the consideration exchanged at that time – and no such evidence has been proffered to the Court.

Thus, despite Plaintiff's assertions to the contrary, legitimate questions of fact regarding Hedman's alleged entitlement to coverage under the alleged Continental policy(ies) exist (and have always existed) and prohibit summary judgment in Plaintiff's favor.

## B. *Viking Pump* Does Not Apply Where the Insured (or Putative Insured) Has Failed to Establish that a Policy (or Policies) is Triggered

Plaintiff contends that, under *Viking Pump*, it is "logical…for the Plaintiff to look for full payment of her judgment from any one of the implicated policy years…" Mot. at 7. Yet, Plaintiff has not established that any policy yea alleged in her Complaint are implicated, let alone the 1976 year in particular. It is undisputed that pursuant to §3420, Plaintiff must demonstrate that the judgment she seeks to enforce against Continental is "for damages for injury sustained or loss or damage occasioned during the life of the policy or contract." §3420(b)(1). This is consistent with well established New York law on the issue of trigger of insurance coverage for asbestos bodily injury claims which was clearly defined by the court in *Continental Cas. Co. v. Employers Ins. Co. at Wausau*, 60 A.D.3d 128 (1st Dep't 2008), leave to app. denied, 13 N.Y.3d 710 (2009)

("*Keasbey*"). Under *Keasbey*, trigger of coverage for asbestos-related bodily injury is decided based on the onset of disease or, in other words, an "injury-in-fact" test. *Keasbey*, at 148; *see also Continental Casualty v. Rapid-American Corp*., 80 N.Y.2d 640 (1993). The *Keasbey* test is the controlling law in New York for the asbestos bodily injury trigger. Any other assertion by Plaintiff is meritless.

Nonetheless, Plaintiff's motion appears to ask that this Court accept the state court's alleged finding that "Mr. Muir was exposed to Hedman's fiber from his father's work clothing from 1970 through 1976 and exposed to Hedman's raw fiber while he worked at the Durez Plant during the summers of 1976 and 1977" as sufficient proof that Mr. Muir was injured during the alleged 1976 policy period, despite the fact that the trial court found that Mr. Muir "enjoyed good health and was working full time..." until his mesothelioma diagnosis in July 2014.CITE. However, in *Keasbey*, the First Department clearly rejected this principle and declined "to follow the suggestion that injury happens on inhalation." *Id.* at 143. Instead, the Appellate Court held "injury-in-fact" occurs when the injury, sickness, disease or disability actually begins and requires the insured to demonstrate actual damage or injury during the policy period. *Keasbey* at 148[4]; *see also American Home Products Corp. v. Liberty Mutual Ins. Co*., 748 F.2d 760, 764 (2d. Cir. 1984) (mere exposure to asbestos does not trigger a coverage obligation).

Therefore, in order for an insured to meet its burden under the "injury-in-fact" trigger in an asbestos bodily injury case, it is required to produce medical evidence illustrating that the

---

[4] To the extent Plaintiff may argue that *Keasbey* is inapplicable because it addressed in part "completed operations" language, any such argument fails to acknowledge that the actual crux of the *Keasbey* decision is its focus on the occurrence definition and the "during the policy period" language generally. The requirements of the non-products/operations language is merely a secondary part of the analysis employed. Indeed, the Court's trigger analysis in *Keasbey* was not impacted by the "operations" provisions. Rather, the independent and primary holding in *Keasbey* is that an asbestos claimant must produce medical evidence that the point where asbestos fibers overwhelmed the body's defenses took place during the policy period.

point where asbestos overwhelmed the body's defenses happened during one of the relevant policy periods. *Id.* at 148; *see also Cont'l Cas. Co v. Rapid American Corp.*, 80 N.Y.2d 640, 651 (N.Y. 1993). Plaintiff must meet this threshold here in order to prove she is entitled to coverage under the alleged 1976 Continental policy(ies). Yet, Plaintiff's Complaint fails to even allege any injury-in-fact during the alleged 1976 Continental policy period and the factual record before the Court fails to establish an injury-in-fact during the alleged 1976 Continental policy period.

Rather than acknowledge longstanding New York law on trigger, Plaintiff argues that the trial court found Mr. Muir was exposed to asbestos from 1970 until 1977. Mot. at 12. Plaintiff's repeated references to purported "injurious exposure" depict that Plaintiff's entire argument on trigger is rooted in a fundamentally flawed equation of "exposure" to "injury" which has been outright rejected by New York courts. Recognizing this fatal deficiency in her claim, Plaintiff resorts to citing the inapplicable case *Consorti v. Owens-Corning Fiber Glass Corp.*, 86 N.Y.2d 449 (1995) to support the argument that "the time of the victim's exposure to the toxic agent is the controlling element for liability for causing disease and *not* the time of the disease manifestation by a mesothelioma diagnosis." Mot. at 12 (emphasis in original). However, in *Consorti,* the Court of Appeals was asked to determine whether a loss of consortium cause of action exists for the spouse of a person who was exposed to asbestos fibers if the resulting illness did not manifest until subsequent to the marriage. *Id*. at 451. The court ruled the plaintiff wife did not have a viable loss of consortium claim, finding that, based on the principles underlying the statute of limitations, for purposes of determining the date of injury for a loss of consortium claim the plaintiff's spouse was "injured" prior to their marriage. *Id*. at 453. Moreover, *Consorti* is particularly inapt as the court's conclusion as to when the injury began for statute of limitations purposes has been abrogated by statute. *See* C.P.L.R. 214-c; *In Re New York City*

*Asbestos Litigation,* 921 N.Y.S.2d 466 (Supreme Court, New York County 2011). Plaintiff herself has apparently taken advantage of this statute because, under *Consorti,* her claim would be barred because the first alleged exposure is 1970.

The *Consorti* court did not address the injury-in-fact trigger test in the context of insurance coverage and how to determine when insurance policies are activated to respond to an asbestos-related illness. The case is simply inapplicable with respect to the insurance coverage trigger issue here. Ultimately, when asbestos bodily injury-in-fact occurs is a significantly disputed material issue of fact. Plaintiff's motion for summary judgment must accordingly be denied.

**C.** ***Viking Pump* Does not Alter Plaintiff's Burden to Establish Full and Proper Underlying Exhaustion**
    **1. The Parties Dispute Whether the Underlying Primary Coverage Has Been Fully and Properly Exhausted**

It is undisputed that an insured (or alleged putative insured) is not entitled to coverage under any excess policy unless complete and proper exhaustion of all underlying coverage, self-insured retentions and deductibles has been established. Plaintiff's motion fails to acknowledge that the issue of full and proper exhaustion of the underlying primary coverage is a longstanding coverage dispute (of which her counsel is well aware). Indeed, it is well documented that Continental historically disputed (and continues to dispute) that Travelers fully and properly exhausted all of its coverage, both U.S. and Canadian, in providing defense and indemnity to Hedman. *See, e.g.* SOF ¶ 14 – 16. Yet, Plaintiff unfoundedly asserts in her motion that the primary policy "directly underlying the Defendants' 1976-1977 excess policies" has been exhausted. To support this contention that the alleged 1976-1977 "Aetna Insurance Company" primary policy has been exhausted, Plaintiff solely relies on an alleged "loss run" provided by Travelers and argues that it illustrates a "full payment of $1,000,000 in losses attributable to the

1976-1977 policy year and was therefore demonstrably exhausted." Plaintiff Mot. at 10, Exs. 8 and 9. However, the purported "loss run" provided by Travelers and attached as an exhibit to Plaintiff's motion actually illustrates significant holes in the allegations of exhaustion, including but not limited to that Travelers apparently allocated significant payments for non-Hedman and/or non-asbestos claims in calculating the alleged impairment and exhaustion of allegedly the applicable limits. SOF ¶ 15. Further, Continental has asserted that claims should have been allocated to a Canadian line of coverage issued by Travelers and that underlying exhaustion is impossible as the Canadian line of coverage has not been impaired. SOF ¶ 16. Plaintiff also makes absolutely no effort to establish that any other primary policy issued by Aetna/Travelers has been exhausted, as required under New York law. *See infra* Section II. C. 2, p. 16 – 17.

### 2. The Alleged 1976 Continental Policy(ies) Require the Exhaustion of Underlying Limits by Actual Payment of Claims or Losses

Moreover, while cited, Plaintiff does not address that the plain language of the alleged 1976 Continental policy(ies) clearly states that:

> "LIMIT OF LIABILITY…
> In the event of reduction or exhaustion of the aggregate limits of liability under said underlying insurance or *by reason of losses paid thereunder*, this Policy, subject to all of the terms, conditions, and definition hereof, shall
> (1)      in the event of reduction pay the excess of the reduced underlying limit;
> (2)      in the event of exhaustion continue in force as underlying insurance."

Bevans Decl., Ex. B (emphasis added).

Contrary to Plaintiff's assertion that "the plain language of the Defendants excess policies obligates full payment in the event that the policyholder's liability exceeds the underlying limits" (see Mot. at 15), New York courts routinely hold that this language clearly and unambiguously requires the exhaustion of the underlying limits by actual payment only. *See, e.g., Mehdi Ali v. Federal Ins. Co.*, 719 F.3d 83 (2d Cir. 2013) (holding that the policyholder must establish actual

exhaustion by payment of claims up to the attachment points of the relevant excess policies); *Forest Laboratories Inc. v. Arch Insurance Co*., 38 Misc.3d 260, 267 (N.Y. Sup. 2012), *aff'd.* 116 A.D.3d 628 (N.Y. App. Div. 2014) (finding that the excess insurer "pays only after the underlying insurers pay up to their policy limits"). Plaintiff's conclusory allegations and mere citations to letters and/or spreadsheets stating that a single primary policy in the alleged 1976 policy year is exhausted does not come close to meeting this burden. As described above, the purportedly "irrefutable evidence" cited by Plaintiff in support of its assertions of underlying exhaustion is an alleged "loss run" that has been fervently disputed by Continental for many years and which Continental maintains does <u>not</u> establish the actual payment of claims under this policy. *See* Plaintiff's Mot. at 16;. Ex. 9.

      **3. Under *Viking Pump*, the Travelers Primary Policies Remain Subject to *Pro Rata* Allocation and It Is Plaintiff's Burden to Establish Exhaustion of All of the Travelers Primary Coverage**

      Plaintiff also ignores that *Viking Pump* does not change longstanding New York law that requires *pro rata* allocation unless the contract language does not expressly dictate otherwise. *See Viking Pump,* 27 N.Y.3d at 253;  *see also, e.g., Consolidated Edison v. Allstate Insurance Company,* 98 N.Y.2d 208, 746 N.Y.S.2d 622 (2002) ("*Con  Ed*"); *Roman Catholic Diocese of Brooklyn v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 21 N.Y.3d 139, 969 N.Y.S.2d 808 (2013). Specifically, the *Viking Pump* decision is strictly limited to the specific "non-cumulation" of liability provisions contained in the excess policies at issue in that case based upon which the New York Court of Appeals narrowly held that "all sums allocation is appropriate in policies containing such [non-cumulation/prior insurance provisions], like the [excess policies] at issue here." *Viking Pump,* 27 N.Y. 3d at 259.[5] It follows that policies which

---

[5] The decision in *Viking Pump* pertained solely to the very narrow questions certified by the Delaware Supreme Court to the New York Court of Appeals: "whether 'all sums' all or 'pro rata'

do not contain non-cumulation/prior insurance provisions like the ones assessed by the Court of Appeals in *Viking Pump* remain subject to *pro rata* allocation.

Here, none of the Travelers' primary policies contain prior insurance/non-cumulation of liability provisions. In turn, in addition to having not established by any means that the "primary policy issued by Aetna Insurance Company" in the 1976-1977 year (or any other year) has been fully and properly exhausted by actual payment, Plaintiff does not address that the primary policies at issue do not contain prior insurance/non-cumulation of liability language. *See* Duggan Aff., Ex. 8. At the end of the day, both the notion of "all sums" allocation and the limited discussion on "vertical exhaustion" in the *Viking Pump* decision are expressly tied to the very narrow circumstance where the policies at issue include prior insurance/non-cumulation of liability provisions.[6] It is beyond dispute that this is **<u>not</u>** the case with respect to the primary policies at issue here. As a result, all of the Travelers' primary policies remain subject to *pro rata* allocation. Accordingly, as Plaintiff has not established full and proper exhaustion of any primary policy in the 1976 policy year or otherwise, her motion for summary judgment fails as a matter of law on its face and must be denied.[7]

### D. *Viking Pump* Does Not Impact Plaintiff's Burden to Establish That Mr. Muir's Alleged Bodily Injury Was Unexpected and Unintended

---

allocation applies where the **excess** insurance policies at issue either follow form to a non-cumulation provision or contain a non-cumulation and prior insurance provision…." *Viking Pump,* Slip Op. at 1 (emphasis added).

[6] Indeed, the second question certified by the Delaware Supreme Court to the New York Court of Appeals expressly stated as follows: "whether, **in light of our answer to the allocation question**, horizontal or vertical exhaustion is required before certain upper level excess policies attach." *Viking Pump,* Slip Op. at 2 (emphasis added). Notably, the Court of Appeals expressly concluded that "all sums allocation and vertical exhaustion apply **based on the language in the policies before us.**" *Id.* (emphasis added).

[7] Continental notes that additional exhaustion issues exist surrounding the what may be at-issue Continental policy(ies).(Plaintiff fails to identify which policies she is suing in her Complaint.) The limits of a number of the lower level Continental policies were eroded and/or exhausted by payments of other liabilities years ago. *See, e.g.* Bevans Decl., Ex. K.

It is undisputed that the alleged 1976 Continental policy(ies) contains the following definition of "Occurrence":

"The term 'Occurrence' wherever used herein means an accident, including continuous or repeated exposure to conditions, which **results in personal injury**, property damage or advertising injury **neither expected nor intended from the standpoint of the insured**."

        Bevans Decl. Ex. B. (emphasis added)

The policy language is clear that, to the extent Hedman is an insured under the policy (which is clearly disputed), coverage is barred to the extent Hedman expected or intended the personal injury allegedly suffered by Mr. Muir. In granting the very judgment which Plaintiff seeks to enforce as against Continental, the state court issued findings of fact which were cited in Plaintiff's Complaint stating that Hedman ignored repeated warnings from the Ontario Ministry of Labor with regard to the dangerous effects of asbestos. SOF ¶ 4. For example, "[i]n 1972, Gyan Rajhans again visited the Hedman facilities and for a third time warned Mr. Mangan that exposure to asbestos could cause cancer in human beings. Hedman did not heed these prior warnings." *Id.*

Plaintiff propounded to the underlying state court that Hedman was warned multiple times about the dangers of asbestos prior to Mr. Muir's exposure. Furthermore, Plaintiff expressly alleges in her Complaint in the underlying action that defendants, including Hedman, "intentionally and willfully failed to adequately warn of the known dangers of exposure to their products and materials." *See* Complaint, *Joseph L. Muir v. Air & Liquid Systems Corp.*, Index No. 809307/2014, Supreme Court of New York, Erie County at ¶ 43.

Accordingly, as Plaintiff herself alleges that Hedman expected or intended to cause Mr. Muir injury, there would be no coverage under the alleged 1976 Continental policy. This is yet

another factual issue blatantly ignored by Plaintiff's motion, which on its face must be denied in light of the plethora of outstanding coverage issues subject to fact and potential expert discovery.

III.    *VIKING PUMP* DICTATES THAT THE "PRIOR INSURANCE AND NON CUMULATION  OF LIABILITY" CONDITION IN THE CONTINENTAL POLICIES MUST BE ENFORCED AS WRITTEN

Notwithstanding the threshold issue of standing under §3420 and the extensive number of coverage issues yet to be addressed, Plaintiff argues that she is "now entitled to an order of Summary Judgment on Count One of her District Court complaint under New York Insurance Law §3420…for the full recovery of the value of her lump sum state court judgment, together with interest thereon." Mot. at 2. Rather than address the various issues which would encumber any allocation in this case, Plaintiff asks this Court to skip every rational (and requisite) step and assume she is entitled to recovery under the alleged Continental  policy(ies). However, the core holding of *Viking Pump* itself vitiates the viability of Plaintiff's motion and precludes summary judgment in her favor.

A.  The "Prior Insurance and Non Cumulation of Liability" Condition Reduces the Limits Under the Alleged 1976 Continental Policy(ies)

The 1976 Continental policy(ies) addressed in Plaintiff's motion contains the following language:

> C. PRIOR INSURANCE AND NON CUMULATION OF LIABILITY
> It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Insured prior to the inception date hereof the limit of liability hereon as stated in item 2 of the Declarations shall be reduced by any amounts due to the Insured on account of such loss under such prior insurance

> Bevans Decl., Ex. B.

To the extent the "Prior Insurance and Non Cumulation of Liability" provision contained in the 1976 Continental Policy(ies) mirrors, in part, certain of the language addressed in the *Viking Pump* decision, this does not mean that Plaintiff is entitled to "full recovery" of "the value

of her lump sum state court judgment, together with interest thereon" under the 1976 Continental policy(ies). To the contrary, *Viking Pump* firmly establishes that the "Prior Insurance and Non Cumulation of Liability" condition in the alleged Continental Policy(ies) is unambiguous and must be enforced in accordance with its plain language. *Viking Pump,* 27 N.Y.3d at 259.

To that end, the "Prior Insurance and Non-Cumulation of Liability" clause clearly provides on its face that if the "loss covered [under the Continental policy] **is also covered** in whole or in part under **any other excess policy** issued to the Insured prior to the inception date hereof **the limit of liability [of the Continental policy] shall be reduced by any amounts due to the Insured on account of such loss under such prior insurance**." Bevans Decl., Ex B. (emphasis added). Plaintiff concedes in her motion that the "Prior Insurance and Non-Cumulation of Liability" clause is an "anti-stacking" provision that prevents her from adding together the limits of policies to recover for Mr. Muir's alleged asbestos-related bodily claim. *See, e.g.,* Mot. at 14; *Viking Pump* Slip Op. at 15 ("non-cumulation clauses prevent stacking, the situation in which 'an insured who has suffered a long term or continuous loss which has triggered coverage across more than one policy period…wishes to add together the maximum limits of all consecutive policies that have been in place during the period of the loss'").

Plaintiff also admits that the "Prior Insurance and Non Cumulation of Liability" provision is "crucial to the proper resolution of the allocation issues because [it] preclude[s] the payment of the limits of more than only policy year for continuous loss." Mot. at 22. By the same token, non-cumulation provisions similar to that contained in the alleged 1976 Continental policy(ies) have routinely been held to <u>restrict</u> available coverage limits under successive policies. *See Hiraldo v. Allstate Ins. Co.,* 5 N.Y.3d 508 (holding the non-cumulation clause was "fatal" to plaintiff's claim that the insurer was liable for up to each policy limit); *Nesmith v. Allstate*

*Insurance Co.,* 24 N.Y. 3d 520 (2014) (holding that "based upon the clear language of the policy at issue," the insurer was not required "to pay more than its single policy limit"); *Liberty Mutual Ins. Co. v. Treesdale, Inc.,* 418 F.3d 330 (3d. Cir. 2005)(stating that the non-cumulation clause "simply provides that if a single occurrence gives rise to an injury during more that one policy period, only one occurrence limit will apply). Indeed, the "Prior Insurance and Non Cumulation of Liability" prevents the "stacking" of limits by reducing the limits under any particular Continental policy by amounts due under "any other excess policy issued to the Insured." In turn, by its plain language, this clause can effectively reduce an insurer's liability under a particular policy containing the clause to zero.

In reaching its decision on "all sums" allocation in *Viking Pump,* the New York Court of Appeals expressly recognized that applying prior insurance/non-cumulation of liability clauses as written could result in less coverage available to the insured - and nonetheless held that such clause must be enforced as written "**despite the limiting impact that such clauses may have on an insured's recovery (and, by extension, that of an injured plaintiff).**" *Viking Pump,* 27 N.Y.3d at 259 (emphasis added); *see also, e.g., E.I. du Pont de Nemours & Co. v. Stonewall Ins. Co.,* 2008 WL 7020668, at *5-6 (Del. Super. Ct. Aug. 14, 2008)("The [non-cumulation] clause reduces the limit of Stonewall's liability for losses which are also covered under a prior year's excess policy to the extent of the amounts due under a prior year's excess policy…I conclude that Stonewall's limit of liability is reduced to zero for losses covered by both Stonewall's policies and by prior years' excess policies").

**B. Under *Viking Pump* and the Plain Language of the Continental Policies, Whether There are  Amounts Due Under Any Policies Issued Prior to 1976 Is a Significant Issue of Material Fact**

Here, the plain language of the "Prior Insurance and Non Cumulation of Liability Provision" requires that if the loss – alleged by Plaintiff to be the Muir Judgment – is covered in

whole in part by any other excess policy issued prior to the 1976 Continental policy(ies), then the limit of the 1976 Continental policy(ies) must be reduced by any amounts due under such prior insurance. Plaintiff has clearly alleged in her Complaint that excess policies in effect during the periods 1967-1979 are at issue and that this action has been brought to "recover the entire Judgment jointly and severally from the Defendants as the insurers of Hedman for asbestos related claims and judgments" under in part, policies in effect prior to 1976. *See* Complaint, ¶ 30. Plaintiff further alleges in the Complaint that excess insurers during the 1967-1979 period "should be required to pay the unsatisfied judgment…" *Id.* at ¶ 31. While Plaintiff's motion asserts that she is entitled to recover the full value of the Muir Judgment from only the alleged excess policies in the 1976 policy period, Plaintiff cannot escape that she herself has alleged that there is prior insurance under which amounts are due to cover the same alleged "loss."

The New York Court of Appeals' ruling in *Viking Pump* and the plain language of the alleged 1976 Continental policy(ies) require that the limits of the alleged 1976 Continental policy(ies) be reduced by the amounts due under "prior insurance." It follows that if it is established that any amounts are due under policies in effect from 1967-1976 to provide coverage for the Muir Judgment, then the limits of any 1976 Continental policy must be reduced by such amounts. It cannot be disputed that Plaintiff has not established or even purported to address the significant issues of fact that exist as to whether any insurance in effect prior to the inception of the alleged 1976 Continental policy(ies) are obligated to satisfy the Muir Judgment and, if so, how much the limits of the alleged 1976 Continental policy(ies) must accordingly be reduced.

Ultimately, Plaintiff fails to address the most significant takeaway from the *Viking Pump* decision – that prior insurance and non-cumulation clauses are unambiguous and must be

enforced as written, and that the limits allegedly available under policies containing such provisions are subject to substantial reduction based on amounts due under prior insurance. Plaintiff's motion for summary judgment must therefore be denied.

## IV.    AT A BARE MINIMUM, PLAINTIFF'S MOTION IS PREMATURE.

Finally, Federal Rule of Civil Procedure 56(d) states that where a nonmovant "cannot present facts essential to justify its opposition, the court may…defer considering the motion or deny it." Fed. R. Civ. P. 56(d). A Rule 56(d) affidavit "must set forth (1) the discovery sought, (2) how such discovery is reasonably expected to create a genuine issue of fact, (3) what efforts the party opposing summary judgment has made to obtain the discovery, and (4) why she was unsuccessful in obtaining the discovery." *Whelehan v. Bank of Am. Pension Plan for Legacy Companies-Fleet-Traditional Benefit*, 5 F. Supp. 3d 410, 420-421  (W.D.N.Y. 2014) (citing *Hudson River Sloop Clearwater, Inc. v. Dept. of Navy*, 891 F.2d 414, 422 (2d Cir. 1989)). In addition, the district court must ensure that the discovery sought is material to the opposition of the summary judgment motion and would raise an issue of material fact. *Sage Realty Corp. v. Insurance Co. of N. America*, 34 F.3d 124, 128 (2d Cir. 1994); *Ford v. Principal Recovery Group, Inc*., 2011 U.S. Dist. LEXIS 111535, *11 (W.D.N.Y. 2011).

Courts in the Western District of New York have denied motions for summary judgment on Rule 56(d) grounds when the information still being sought in discovery is material to the issues raised on summary judgment. *See, e.g. Carpenter v. Churchville Greene Homeowner's Ass'n,* 2011 U.S. Dist. LEXIS 17042 (W.D.N.Y. 2011)(denying Motion for Summary Judgment where Plaintiffs' sought information that in discovery "could give rise to an inference of discrimination in violation of the Fair Housing Act"); *Brooks v. Prack*, 77 F. Supp. 3d 301, 311 (W.D.N.Y. 2014)(stating that defendants "may renew their motion for summary judgment after plaintiff has had an opportunity to engage in discovery").

Prior to the filing of Plaintiff's Motion, the parties had not exchanged preliminary disclosures, held a scheduling conference, met and conferred, or had any discussion whatsoever with regard to discovery in the *Muir* action and the preliminary progression of the case. In order to begin the discovery process which Plaintiff's failed to do (notwithstanding the Federal Rules requiring otherwise), Continental has served Interrogatories and Requests for Production. Plaintiff's Responses to same are due on or before August 12, 2016. As a practical matter, Continental also intends to conduct expert discovery and expects depositions will be required with regard to disputed coverage issues, including but not limited to, for example, when Mr. Muir suffered injury-in-fact.

Accordingly, at the bare minimum, the early stage of this case cripples Continental's ability to respond adequately to the many material issues of fact raised by – and ignored in – Plaintiff's Motion and the Motion must accordingly be denied.

## <u>CONCLUSION</u>

For all the above reasons, Continental respectfully requests that the Court deny Plaintiff's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 and for such other and further relief as the Court deems proper.

Respectfully submitted,

 _/s/ Rachel H. Bevans_____
Eileen T. McCabe, Esq.
Jaimie H. Ginzberg, Esq.
Rachel H. Bevans, Esq.
**MENDES & MOUNT, LLP**
750 Seventh Avenue
New York, NY 10019
(212) 261 – 8000

Dated: New York, New York
        July 22, 2016

*Attorneys for Continental Insurance Company,
Individually and as Successor to Certain Liabilities
of Harbor Insurance Company*